**CLIFTON A. FAHIE, JR., Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2011-0004
Supreme Court of the Virgin Islands
August 14, 2013

KELE ONYEJEKWE, ESQ., Territorial Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

KIMBERLY L. SALISBURY, ESQ., PAMELA R. TEPPER, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(August 14, 2013)

CABRET, *Associate Justice.* On March 22, 2010, Clifton Fahie, Jr., broke into Istin Levine's home and assaulted her. Following a jury trial, Fahie was convicted in the Superior Court of simple assault and battery, burglary in the second degree, and false imprisonment. Fahie appeals, claiming the Superior Court erred by failing to instruct the jury on self-defense and by incorrectly instructing the jury regarding the elements of false imprisonment. For the reasons that follow, this Court rejects Fahie's claims of error and affirms the Judgment and Commitment of the Superior Court.

## I. FACTUAL AND PROCEDURAL HISTORY

At approximately 7:35 a.m. on March 22, 2010, Clifton Fahie, Jr., entered the home of Istin Levine without her permission. Levine, sixty-eight years old at the time, had just finished showering and was drying herself with a towel in the doorway between her bathroom and bedroom. Fahie, who had entered Levine's home from a door that led

directly into her bedroom, approached Levine and pushed her into her unlit bathroom, closed the bathroom door, and assaulted her. The Virgin Islands Police Department later arrested Fahie, and the People of the Virgin Islands charged him with the crimes of assault in the first degree, attempted rape in the first degree, burglary in the second degree, false imprisonment, and unlawful sexual contact in the first degree.

At trial, Levine testified that on the morning of March 22, 2010, she awoke and, after making breakfast, noticed that the outside porch light was still on. Because the porch light was connected to an exterior outlet, Levine had to go outside to turn the light off. After turning the light off, Levine went back inside, closed the door behind her, and went to take a shower. While she was in her bedroom drying off, Levine said she felt the "presence of something." (J.A. vol. I, 128-29.) She turned and saw Fahie standing in her bedroom doorway approximately a foot away from her, blocking her from getting out of the bedroom. When she asked Fahie, "[W]hat are you doing in here?" Fahie did not answer. (J.A. vol. I, 129-30.) Instead, he entered her bedroom, pushed Levine into her unlit bathroom, and closed the door.

Levine said she looked for a way to get around Fahie to get out of the bathroom and into her bedroom, but Fahie blocked her path and tried to force her onto the floor. Levine struggled and attempted to get away, but she could not get the bathroom door open. She grabbed onto a towel bar to keep herself from being pulled to the floor, but the bar broke loose, ripping out of the wall, and Fahie was able to get on top of her. According to Levine, during the struggle, Fahie fondled her breast and then inserted his finger into her vagina. As he attempted to get his pants down, Levine screamed for help, yelling "Murder, murder, somebody help me. Somebody help me. Police. Somebody call the police. Somebody call the police." (J.A. vol. I, 135.) Despite her yelling, Fahie did not stop and ended up wedging Levine's head against the toilet bowl. Levine testified that although her head was wedged against the toilet bowl, she managed to grab the fallen towel bar and hit Fahie with it. Levine also testified that she offered Fahie twenty dollars to leave, but he did not respond and "just [kept] wrestling [her]." (J.A. vol. I, 135-36.) Levine said that during the attack she bit Fahie on his face, but was unsure precisely where because her bathroom does not have any windows and the light was off throughout the assault. Because Levine continued to scream and call for help throughout the attack, Fahie told her he was leaving because she was

"making too much noise." (J.A. vol. I, 138-39.) Fahie then got up, opened the bathroom door, and left, leaving Levine on the floor with her head wedged against the base of the toilet bowl. Police found blood in Levine's hair, throughout the bathroom, and in a trail leading from the bathroom to the bedroom and out onto the porch. DNA testing matched the blood with Fahie.

In addition to Levine's testimony, the People also presented the testimony of Laverne Oysterman, a neighbor who lives with her husband in an apartment behind Levine. Oysterman testified that on the morning of March 22, 2010, she was awakened by Levine yelling "murder, somebody help me," and that her screams and calls for help continued for approximately fifteen to twenty minutes. (J.A. vol. I, 98, 102.) Oysterman's husband called the police, and as they waited, Oysterman looked out and saw a man walking off Levine's porch while "fixing up his pants" as he went, between 7:55 and 8:00 that morning. (J.A. vol. I, 98, 102-04.) Oysterman testified that she saw the man's face because he looked back in her direction as he walked off, and she recognized him because he occasionally sold baked goods at the hospital where she works.

In his defense, Fahie testified that he went to Levine's house on March 22, 2010, to collect forty dollars she owed him for jewelry and hair pieces she purchased from him one year and a half before. Fahie said that Levine's door was open when he arrived, so he knocked on it three or four times, but when nobody answered he let himself in. Upon entering the house, Fahie saw Levine drying herself off with a towel and then go into the bathroom. Fahie testified that he followed Levine into the bathroom and told her, "I know you might feel uncomfortable how you ain't get on no clothes or whatever. . . . All I want is my money. Me ain't come kill you. Me ain't come mess with you in no kind of way. I just want my money." (J.A. vol. II, 116.) At that point Levine started screaming "murder," so Fahie said he put his hand on her wrist to assure her he only wanted his money. (J.A. vol. II, 116-17.) According to Fahie, Levine offered him twenty dollars, but he refused to take it because she owed him forty. Fahie said that as he started to leave Levine bit him and he saw a towel bar on the floor, grabbed it, and raised it twice to hit Levine, but then changed his mind and instead left the house.

Initially, Fahie denied pushing Levine into the bathroom. However, upon further questioning, Fahie admitted that he did push Levine into the

509

bathroom, "slam[ming] her like twice" after she bit him and he saw his "blood gushing." (J.A. vol. II, 122, 145.) Fahie claimed that even though he did not slam Levine hard, she "end[ed] up kind of booting her head against the tub." (J.A. vol. II, 122.) Fahie added that he acted out of frustration but was not trying to give Levine a "concussion or bust her head or anything." (J.A. vol. II, 122.)

On January 14, 2011, following a two-day trial, a jury found Fahie guilty of simple assault and battery — a lesser included offense of the first-degree assault charge — in violation of 14 V.I.C. §§ 291, 299(1); burglary in the second degree in violation of 14 V.I.C. § 443; and false imprisonment in violation of 14 V.I.C. § 1051. Fahie filed a notice of appeal on January 28, 2011. The Superior Court entered its Judgment and Commitment on May 10, 2011,[1] and sentenced Fahie to six months for simple assault and battery, twelve years for burglary, and five years for false imprisonment, all running concurrently.

## II. JURISDICTION

We have jurisdiction over this criminal appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." A judgment in a criminal case is a final order from which an appeal may lie. *See, e.g., Potter v. People*, 56 V.I. 779, 787 (V.I. 2012); *Browne v. People*, 56 V.I. 207, 216 (V.I. 2012); *Melendez v. People*, 56 V.I. 244, 251 (V.I. 2012); *Brown v. People*, 49 V.I. 378, 380 (V.I. 2007).

## III. DISCUSSION

Fahie presents two arguments on appeal: (1) the trial court erred by failing to instruct the jury on self-defense, and (2) the trial court erred by not including in its instructions to the jury the test for determining false imprisonment as adopted by the United States Court of Appeals for the Third Circuit in *Government of the Virgin Islands v. Berry*, 604 F.2d 221, 16 V.I. 614 (3d Cir. 1979). We consider each argument in turn.

---

[1] Supreme Court Rule 5(b)(1) provides that "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." Therefore, even though Fahie filed his notice of appeal before the Superior Court entered its Judgment and Commitment, it is timely.

## A. The Superior Court correctly instructed the jury on Fahie's assault charge.

Fahie first argues that there was "ample evidence of self-defense in [his] testimony" to warrant a jury instruction on self-defense for the assault charges. (Appellant's Br. 14.) It is undisputed that the Superior Court did not instruct the jury on self-defense. But, as the People points out, Fahie "never objected to the jury instruction[s] and never offered an instruction for self-defense." (Appellee's Br. 10.) Accordingly, we review only for plain error. *Elizee v. People*, 54 V.I. 466, 475 (V.I. 2010) (citing *United States v. Marcus*, 560 U.S. 258, 130 S. Ct. 2159, 2164, 176 L. Ed. 2d 1012 (2010)). To establish plain error, Fahie must show an error, which was plain, that affected his substantial rights. *Id.* If we determine that the error meets these requirements, we may grant relief in our discretion if we feel the error seriously affects the "fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citations omitted). To affect Fahie's substantial rights, the "error must be prejudicial, which means that there must be a reasonable probability that the error affected the outcome of the trial." *Id.* at 479 (quoting *Marcus*, 130 S. Ct. at 2164) (internal quotation marks omitted). Unlike harmless error analysis, under plain error analysis, the burden falls on the appellant to show how the error prejudiced him. *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). Fahie has failed to carry this burden.

▇ To support his claim that the Superior Court's failure to instruct the jury regarding self-defense was error, Fahie points to *Phipps v. People*, 54 V.I. 543 (V.I. 2011), and argues that *Phipps* "thoroughly disposes of this part of the case." (Appellant's Br. 16.) *Phipps*, however, is distinguishable because in that case the defendant claimed self-defense at trial and the Superior Court instructed the jury on self-defense. *See id.* at 545, 547. *Phipps* found plain error not in the failure to instruct, as Fahie contends, but rather in the actual jury instruction because it impermissibly shifted the burden to the defendant to prove self-defense. *Id.* at 546. That error affected the defendant's substantial rights because the instruction " 'could have been critical to the outcome of the case,' " as " '[t]he question of self-defense was central to the defendant's case.' " *Id.* at 549 (quoting *Gov't of the V.I. v. Smith*, 949 F.2d 677, 681-82 (3d Cir. 1991)). While Fahie is correct that "[t]he words 'self defense' need not be uttered

511

or raised by counsel," (Appellant's Reply Br. 9), the defendant must first raise self-defense before the trial court is required to instruct the jury regarding self-defense. *Phipps*, 54 V.I. at 549 ("[I]t is well-established . . . that *when self-defense has been placed in issue*, the jury must be instructed . . . on that issue." (emphasis added) (internal quotation marks and citations omitted)); *Smith*, 949 F.2d at 681 ("[I]t is reversible error for a [trial] court to refuse to give a general instruction on self-defense *when the evidence reveals a basis* for the defense." (emphasis added)). In this case, Fahie never claimed self-defense at trial, nor did he make self-defense central to his case. Fahie's attorney did not raise self-defense in his opening statements, closing arguments, or elsewhere during trial. Because Fahie did not make self-defense an issue in his case, Fahie's conclusory citation to *Phipps* is insufficient to show that the Superior Court erred and that the asserted error affected Fahie's substantial rights.

Although neither Fahie nor his counsel raised the issue of self-defense at trial, Fahie nevertheless argues that his testimony — that "he took a towel rack to hit [Levine] back in self defense" — established a basis for an instruction on self-defense. (Appellant's Br. 16.) He claims that under 14 V.I.C. § 293(a)(6) the Superior Court, on its own, should have instructed the jury on self-defense since "the issue was fairly raised because Fahie testified to (1) being attacked by the victim, (2) to self defending, and (3) to leaving the scene thereafter." (Appellant's Reply Br. 8-9 (citing J.A. vol. II, 118).) We note that, contrary to his claim on appeal, Fahie did not testify that he grabbed the towel rack to defend himself. Instead, Fahie testified that he grabbed the towel rack, raised it twice to hit Levine, but then changed his mind and left. Although Fahie mischaracterizes his own testimony, we nevertheless consider his self-defense argument because Fahie did testify that he "slammed" Levine after she bit him.

██ ██ To warrant an instruction on self-defense under section 293(a)(6), there must be some evidence that the defendant acted "in self defense . . . against *unlawful violence* offered to his person . . . ." 14 V.I.C. § 293(a)(6) (emphasis added). In this case, Fahie's own testimony established that he entered Levine's residence without permission. It is unlawful under Virgin Islands law to enter another's residence without permission. *See* 14 V.I.C. § 1741 (making it unlawful to "enter[] upon the land of another without the consent of the owner"); 14 V.I.C. § 1747 (making it unlawful to "enter[] another's domicile without consent of the

tenant"). Under Virgin Islands law, a resident who knows that someone has unlawfully entered his home "shall be presumed to have held a reasonable belief that there is an imminent threat of harm to his person." 14 V.I.C. § 44(c). The resident may then use justifiable force to resist and eject the intruder. 14 V.I.C. § 44(a)(2).[2]

 Even under Fahie's view of the evidence — that, other than placing his hand on Levine's wrist, no violence occurred before Levine bit him and that she bit him after he had already turned to leave her home — Fahie still has not shown that there was a basis for the Superior Court to give an instruction on self-defense. If the evidence had shown that Levine used excessive or unjustified force, then Fahie may have been acting in self-defense. Here, however, Fahie does not claim or argue — and certainly has not shown — that the evidence at trial showed that Levine's use of force was excessive or unlawful. Instead, Fahie's own testimony established a basis for Levine to use justifiable force to resist and eject him from her home. Fahie admitted to unlawfully entering Levine's home. Because he was in Levine's home unlawfully, Levine could then use justifiable force to resist and eject him. Given Fahie's own testimony that he entered a sixty-eight-year-old woman's home and initiated contact with her in her unlit, windowless bathroom, as she stood naked, screaming out "murder," Fahie has not shown that the evidence at trial proved that Levine was unreasonable in believing that Fahie posed an imminent threat to her or that the force Fahie claims Levine used to resist and eject him from her home was not justified and therefore unlawful. The entire record, including Fahie's own testimony, fails to support his claim that the Superior Court should have instructed the jury on self-defense. Because the evidence at trial does not show that Fahie acted in self-defense against unlawful violence by Levine when he "slammed" her in response to the bite, Fahie has failed to show that the jury should have been instructed on self-defense under 14 V.I.C. § 293(a)(6).[3]

---

[2] "Any person is justified in the use of force when . . . the person is resisting an unlawful or forcible entry by another into his residence and he reasonably believes that there is an imminent threat of harm to him or his family." 14 V.I.C. § 44(a)(2).

[3] In his brief, Fahie also argues that his conviction for second-degree burglary cannot stand, because the Superior Court failed to instruct the jury on self-defense. This argument does not warrant discussion because the crime of second-degree burglary is completed as soon as the defendant enters the home with the intent to commit an offense inside, in this case assault.

■ Accordingly, viewing all of the evidence, we cannot say that Fahie met his burden of showing that the Superior Court erred by failing to instruct the jury *sua sponte* on self-defense. *Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 766-67, 44 V.I. 336 (3d Cir. 2001) (explaining that a trial court is required to instruct the jury on self-defense when the evidence presented at trial reveals a basis for that defense). Because the evidence presented at trial did not warrant an instruction on self-defense, the Superior Court did not err. As Fahie has failed to show plain error, we affirm his conviction for simple assault and battery.

## B. The Superior Court erred in instructing the jury on the elements of false imprisonment, but that error was harmless.

Fahie next argues that the Superior Court erred in instructing the jury regarding false imprisonment because the court failed to include the test for confinement required under 14 V.I.C. § 1051 as adopted by the Third Circuit in *Berry*. Fahie did not object at trial when the court instructed the jury on false imprisonment, so we review only for plain error. *Elizee*, 54 V.I. at 475.

■ To determine whether the Superior Court's instruction adequately informed the jury of the elements of false imprisonment, we first look to the statute. In the Virgin Islands, criminal false imprisonment occurs when someone "without lawful authority confines or imprisons another person within this Territory against his will . . . with intent to cause him to be confined or imprisoned in this Territory against his will." 14 V.I.C. § 1051. Although this Court has yet to interpret section 1051, as Fahie points out, " '[d]ecisions rendered by the Third Circuit . . . are binding upon the Superior Court even if they would only represent persuasive authority when this Court considers an issue.' " (Appellant's Br. 21 (quoting *Phipps*, 54 V.I. at 549 n.4).) In *Berry*, the Third Circuit held that whether a defendant has engaged in kidnapping must be determined in light of four factors:

> (1) the duration of the detention or asportation; (2) whether the detention or asportation occurred during the commission of a separate

---

*See* 14 V.I.C. § 443. In other words, actually assaulting someone after breaking and entering into that person's home is irrelevant to second-degree burglary because the crime is completed before any assault can possibly take place. Accordingly, any instruction regarding self-defense could not have affected the jury's finding on second-degree burglary.

offense; (3) whether the detention or asportation which occurred is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.

*Berry*, 604 F.2d at 227. This four-factor test also governs the lesser included offense of false imprisonment. *Id.* at 227 n.13. Not every "asportation or detention" rises to the level of kidnapping or false imprisonment, however. *Id.* at 227. Because the statutes defining these offenses are silent regarding the distance of the asportation or the duration of the detention or confinement necessary for kidnapping or false imprisonment, the Third Circuit reasoned that without a requirement that the asportation or detention meet some threshold level, "persons who have committed such substantive crimes as robbery or assault — which inherently involve the temporary detention or seizure of the victim — will suffer the far greater penalties prescribed by the kidnapping statutes." *Id.* at 226. We agree with the reasoning in *Berry* and adopt its four-factor test for determining whether a confinement is incidental to the commission of another crime or constitutes the separate offense of false imprisonment under 14 V.I.C. § 1051.[4]

---

[4] We recognize that the Third Circuit declined to extend the four *Berry* factors to 14 V.I.C. § 1052(b) in *Government of the Virgin Islands v. Ventura*, 775 F.2d 92 (3d Cir. 1985). When *Berry* was decided, section 1052 of title 14 criminalized only kidnapping for ransom, extortion, or robbery. *See, e.g., Berry*, 604 F.2d at 224 (quoting former 14 V.I.C. § 1052 (1978)). "[A] rapist's asportation of his victim, no matter how far," was considered part of the overall offense of rape. *Ventura*, 775 F.2d at 97. In 1983, however, the Legislature made kidnapping with intent to commit rape a separate offense, re-designating the general kidnapping statute as section 1052(a) and adding kidnapping with intent to commit rape as section 1052(b). *See* Act No. 4838, 1983 V.I. Sess. Laws 100-01. In determining whether *Berry*'s four factor test also applied to violations of section 1052(b), the Third Circuit explained in *Ventura* that the Legislature rendered *Berry*'s second and third factors — whether the detention or asportation occurred during the commission of a separate offense and whether the detention or asportation is inherent in that separate offense, *see Berry*, 604 F.2d at 227 — "irrelevant" because the asportation or detention that may have been necessary to commit rape were no longer a part of the rape itself, but rather an entirely separate offense. *See Ventura*, 775 F.2d at 97. As a result, the court concluded that only "the first and fourth factors of the *Berry* test — duration of detention and danger to the victim over and above the danger posed by the separate offense — are applicable" when determining whether section 1052(b) is violated. *Id.* at 98. But *Ventura* — by its own terms — was specifically limited to the extension of the *Berry* factors to section 1052(b), leaving the application of the *Berry* factors to what is now section 1052(a) and section 1051 undisturbed. *Id.* at 98 n.11 ("Of course, our holding in this case does not disturb the rule of *Berry* itself.").

■ In this case, the jury had to determine whether Fahie committed assault, attempted rape, unlawful sexual contact, burglary, and false imprisonment, or any combination of these crimes. In instructing the jury on false imprisonment, the Superior Court explained that in order to find Fahie guilty of false imprisonment, the People had to prove beyond a reasonable doubt:

> [t]hat the defendant, Clifton A. Fahie, Jr. number one. On or about March 22, [2010] in St. Thomas, Virgin Islands, number two. Without lawful authority, number three. Confined or imprisoned another person within this Territory. Number four, that it was against the person[']s will. And number five, that it was with the intent to cause a person to be confined or imprisoned in this Territory against his or her will.

(J.A. vol. II, 218-19.) This instruction failed to charge the jury to consider how long Fahie confined Levine; whether the confinement posed any danger to her; whether the confinement occurred before, during, or after the assault, attempted rape, or unlawful sexual contact; and whether confining Levine was incidental or integral to committing one of the other offenses Fahie allegedly committed. Thus, the jury convicted Fahie of false imprisonment without determining whether Levine's confinement satisfied the *Berry* test. Because the Third Circuit's decision in *Berry* binds the Superior Court, and because *Berry* has construed 14 V.I.C. § 1051 to require the jury to consider whether the confinement was incidental to the commission of another offense, the Superior Court erred and that error is plain.

■ However, although the Superior Court erred in failing to·instruct the jury to determine whether Levine's confinement satisfied *Berry*, the court's error does not mean that reversal is warranted. Under plain error review, the error must be prejudicial, meaning that it must have affected the outcome of the trial and thus affected Fahie's substantial rights. *Elizee*, 54 V.I. at 479. The error must also seriously affect the fairness, integrity, or public reputation of the judicial proceeding. *Id.* at 475. Accordingly, we must determine whether the erroneous jury instruction prejudiced Fahie or was harmless.[5] *See generally Francis v. People*,

---

[5] We recognize that although we review here for plain error, courts have held that the third part of plain error review involves the same inquiry as harmless error analysis. *See Barnard v.*

52 V.I. 381, 391-93 (V.I. 2009) (discussing cases that hold that erroneous jury instructions do not automatically require reversal); *see also Prince v. People*, 57 V.I. 399, 405 (V.I. 2012) ("When reviewing unpreserved charging errors, we have observed that a claim of improper instruction will rarely justify reversal of a criminal conviction when no objection has been made in the trial court. A jury instruction that omits a required element of the offense or defense will be disregarded if it does not impact substantial rights and is harmless beyond a reasonable doubt, even if the instruction was objected to at trial." (internal quotation marks and citations omitted)); *State v. Jordan*, 129 Conn. App. 215, 19 A.3d 241, 247 (Conn. App. Ct. 2011) (finding failure to instruct jury about the amount of confinement necessary to distinguish kidnapping from assault to be harmless). If, at the end of our examination, we "cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error — for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding — [we] should not find the error harmless." *Neder v. United States*, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). However, if we find that the erroneous jury instruction did not contribute to the verdict, then the error is harmless and therefore did not prejudice Fahie. *Id.* at 16; *see also Francis*, 52 V.I. at 391-92 (applying *Neder* in reviewing jury instruction for plain error). As discussed earlier in the opinion, the burden falls on the appellant to show how the error prejudiced him. *Olano*, 507 U.S. at 734. In this case, Fahie does not show how he was prejudiced. Instead, he concludes that if the Superior Court had followed *Berry* in instructing the jury, the jury would have acquitted him. We disagree.

First, we note that by convicting Fahie of false imprisonment but acquitting him of assault in the first degree, attempted rape in the first

---

*State*, 2012 OK CR 15, 290 P.3d 759, 764 (Okla. Crim. App. 2012) ("[E]ven though we review for plain error, rather than [preserved] error, the harmless error doctrine of the United States Supreme Court's decisions in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) and *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), still apply to our analysis here. This is because the only way to determine whether the omission of the element from the jury instruction affected Barnard's substantial rights is to evaluate the error for its effect on the jury verdict, the same test applied in *Neder*, albeit for harmless error in that case, not plain error." (parallel citations omitted)); *State v. Vance*, 734 N.W.2d 650, 660 n.8 (Minn. 2007) ("Although the harmless error standard differs from the plain error standard, both the harmless error standard and the third prong of the plain error test consider whether the error contributed to the verdict.").

degree, and unlawful sexual contact, the jury clearly found that Fahie intentionally confined Levine against her will, but that he did not confine her while committing first-degree assault with intent to commit rape, attempted rape, or unlawful sexual contact. That is, according to the jury, Fahie did not assault Levine by pushing her into her bathroom with the intent to rape her, nor did he attempt to rape her or engage in unlawful sexual contact while in the bathroom with her. Consequently, even if the court had instructed the jury to consider the *Berry* factors to determine whether Levine's detention was a separate offense or incidental to committing first-degree assault with intent to commit rape, attempted rape, or unlawful sexual contact, it is clear that the jury's verdict would have been the same because the jury clearly weighed the evidence, including Levine's testimony, and acquitted Fahie of first-degree assault with intent to commit rape, attempted rape, and unlawful sexual contact — the offenses which the People claimed Fahie committed while confining Levine in her bathroom. Thus, the trial court's failure to instruct the jury to consider the *Berry* factors in relation to the offense of first-degree assault with intent to commit rape, attempted rape, and unlawful sexual contact did not contribute to the false imprisonment verdict because the jury's verdict clearly shows that Fahie intentionally confined Levine, but that he did not confine her during the commission of any separate offense.

The Supreme Court of Connecticut reached a similar conclusion in *State v. Kitchens*, 299 Conn. 447, 10 A.3d 942 (Conn. 2011). There, the trial court failed to follow *State v. Salamon*, 287 Conn. 509, 949 A.2d 1092 (Conn. 2008),[6] which held that the jury must consider whether the

---

[6] In *Salamon*, the Connecticut Supreme Court re-examined its long-standing jurisprudence that allowed a conviction for kidnapping without distinguishing between "confinements or movements of a victim that are merely incidental to and necessary for the commission of another crime." *Salamon*, 949 A.2d at 1117. In reversing its prior interpretation, the court held that

> the jury should be instructed to consider the various relevant factors, including the nature and duration of the victim's movement or confinement by the defendant, whether that movement or confinement occurred during the commission of the separate offense, whether the restraint was inherent in the nature of the separate offense, whether the restraint prevented the victim from summoning assistance, whether the restraint reduced the defendant's risk of detection and whether the restraint created a significant danger or increased the victim's risk of harm independent of that posed by the separate offense.

victim's detention rose to the level of kidnapping or an unlawful restraint or was merely incidental to another offense. *Kitchens*, 10 A.3d at 952. Kitchens was charged with assault in the first degree, attempted assault in the first degree, burglary in the second degree, kidnapping in the second degree, and unlawful restraint in the first degree, but the jury convicted him only of kidnapping and unlawful restraint. *Id.* at 948. On appeal, Kitchens argued that the trial court committed plain error because it failed to instruct the jury pursuant to *Salamon*. The Connecticut Supreme Court agreed with Kitchens that the error was plain, but disagreed that it warranted reversal, reasoning that the erroneous jury instruction

> was harmless under the circumstances because the defendant was acquitted of all charges other than kidnapping and unlawful restraint, thus indicating that the jury believed only the victim's allegations with respect to the defendant's moving her forcibly from the apartment building's vestibule to another area outside and then back inside and up to [her godfather's] apartment, where the defendant then confined her temporarily. Put differently, the jury's verdict, which indicated the jury's disbelief of the victim's allegations of assault . . . is a conclusive finding that there was no separate crime underlying the kidnapping charge.

*Id.* at 953 (citations omitted). Thus, as in *Kitchens*, the predicate offenses underlying the unlawful confinement — here first-degree assault with intent to commit rape, attempted rape, and unlawful sexual contact — did not occur while Fahie confined Levine in her bathroom. Thus, there was no separate crime underlying the false imprisonment charge.

 Nevertheless, Fahie argues that because the trial court failed to follow *Berry*, "it is impossible to tell whether the false imprisonment related to the assault, or the victim's testimony about a locked bathroom door." (Appellant's Reply Br. 13.) We reject that argument. In instructing the jury, the Superior Court explained that simple assault and battery was a lesser included offense of the assault in the first degree with intent to commit rape charge. The trial court instructed the jury that if they found Fahie not guilty of first-degree assault with intent to commit rape, they should then consider the lesser included offense of simple assault and

---

*Id.* at 1121 (citing, among other cases, *Berry*, 604 F.2d at 227).

battery and determine whether Fahie used unlawful violence upon Levine with intent to injure her. "In other words," the court explained, "the second element of intent to commit rape is not present in simple assault [and battery]." (J.A. vol. II, 211.) Thus, the jury had to determine whether Fahie used unlawful violence when he pushed Levine into her bathroom and whether he intended to injure her. Here, even if the jury had considered the *Berry* factors, it is clear that Fahie did not temporarily confine Levine while committing simple assault and battery because the evidence shows that the offense of simple assault and battery was completed at the moment Fahie pushed Levine into her bathroom with the intent to injure her. However, the offense of false imprisonment — confining or imprisoning Levine against her will with the intent to cause her to be confined or imprisoned against her will, *see* 14 V.I.C. § 1051 — only began once Fahie closed the bathroom door and intentionally confined Levine, physically preventing her from leaving. The jury heard Levine testify that she noticed Fahie in her bedroom doorway at "25 minutes to 8 o'clock," when he entered her bedroom, pushed her into her bathroom, and closed the door. (J.A. vol. I, 129-30.) Officer Adora John's testimony — that she was dispatched to Levine's home at 7:37 a.m. — corroborated Levine's testimony regarding the approximate time her confinement began. Oysterman's testimony — that she heard Levine screaming for approximately fifteen to twenty minutes and then saw Fahie leave Levine's house around 8 a.m. — also corroborated Levine's testimony regarding the duration of her confinement in the bathroom. This evidence shows that Levine's confinement began after Fahie pushed Levine into her bathroom, and then continued for approximately twenty-five minutes. Clearly, Levine's confinement was not inherent in or incidental to Fahie committing simple assault and battery upon Levine. For these reasons, it is clear beyond a reasonable doubt that the Superior Court's error in failing to instruct the jury regarding the *Berry* factors was harmless and did not contribute to the false imprisonment verdict. *See Neder*, 527 at 16 ("[T]he test for determining whether a constitutional error is harmless . . . . is whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967))). Accordingly, we affirm Fahie's conviction for false imprisonment.

## IV. CONCLUSION

The evidence at trial did not warrant an instruction on self-defense and, therefore, the Superior Court's jury instruction on simple assault and battery was not erroneous. Additionally, while the Superior Court erred by failing to follow *Berry* in instructing the jury regarding false imprisonment, Fahie failed to show that the error prejudiced him. Because we conclude beyond a reasonable doubt that the erroneous jury instructions did not contribute to the false imprisonment verdict, the error was harmless. Therefore, we affirm the Superior Court's May 10, 2011 Judgment and Commitment.