**JONATHAN PHIPPS, Appellant/Defendant**
**v.**
**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Crim. No. 2008-0032
Supreme Court of the Virgin Islands
February 14, 2011

LESLIE LEVI PAYTON, ESQ., St. Thomas, USVI, GEORGE H. HODGE, JR., ESQ., St. Thomas, USVI, *Attorneys for Appellant.*

TIFFANY V. MONROSE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.* SWAN, Associate Justice, concurring.

## OPINION OF THE COURT

(February 14, 2011)

HODGE, C.J. Appellant Jonathan Phipps seeks, on numerous grounds, reversal of his convictions for assault in the third degree and using or possessing a dangerous weapon during a crime of violence. Since the Superior Court committed plain error when it improperly instructed the jury on self-defense, this Court reverses Phipps's convictions and remands the matter for a new trial.

544

## I. FACTUAL AND PROCEDURAL BACKGROUND

At approximately 4:30am on June 5, 2006, Phipps, after several hours of socializing with friends in the downtown Charlotte Amalie, St. Thomas area, visited the Skyhigh Nightclub for the second time that night. At the nightclub, Phipps observed his girlfriend get into a fight with Yudelkys Belliard Mateo Davis. Eventually, this altercation escalated into a fight between Phipps and Davis's boyfriend, Edwin Rosario. Phipps subsequently went to his car and returned with a machete, which he began to swing at Rosario and others. Thomas Esquerdo, a security guard, attempted to break up the fight by spraying mace at both Phipps and Rosario, but Phipps continued to swing his machete. Leroy Donovan, an off-duty police officer, ordered Phipps to stop swinging the machete and, after Phipps refused, shot him several times. Phipps lost his leg as a result of the shooting.

The Virgin Islands Police Department arrested Phipps without a warrant on June 6, 2006. The People of the Virgin Islands subsequently filed an information on June 27, 2006, which charged Phipps with three counts of assault in the third degree and three counts of use or possession of a dangerous weapon during a crime of violence, with each count relating to Phipps's interactions with Davis, Rosario, and Donovan. Phipps's trial occurred from November 27, 2007 to November 28, 2007, and at trial Phipps testified that although he swung the machete at Rosario, he had acted in self-defense because Rosario had chased him from the bar to his car. The jury, however, convicted Phipps of one count of assault in the third degree and one count of use or possession of a dangerous weapon during a crime of violence — both with respect to Rosario — even though it acquitted him on all other charges.

The Superior Court held a sentencing hearing on January 10, 2008, and Phipps timely filed his notice of appeal on January 14, 2008.[1] On January 29, 2008, the Superior Court entered a written judgment and commitment sentencing Phipps to seven years and six months incarceration on the dangerous weapon charge and one year on the assault charge, with the sentences to run concurrently.

---

[1] "A notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I.S.CT.R. 5(b)(1).

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4 § 32(a). Because the Superior Court's January 29, 2008 Judgment and Commitment constitutes a final judgment, this Court possesses jurisdiction over Phipps's appeal.

Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while the Superior Court's factual findings are only reviewed for clear error. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Moreover, unless its decision involves application of a legal precept — in which case this Court would exercise plenary review — this Court only reviews the Superior Court's jury instructions for abuse of discretion. *Phillips v. People*, 51 V.I. 258, 269 (V.I. 2009). Nevertheless, when a criminal defendant fails to object to a Superior Court decision or order — as was the case here — this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived. *Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court will exercise its discretion to reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id* at 390-91.

### B. The Superior Court Committed Plain Error In its Self-Defense Jury Instruction

Phipps, as one of several issues raised in his appellate brief, contends that this Court should reverse his convictions because the Superior Court purportedly provided jury instructions that impermissibly shifted the burden of proof for self-defense. We agree.

When reviewing a self-defense jury instruction under a plain error standard, this Court must "look on a case-by-case basis to such factors as the obviousness of the error, the significance of the interest protected by the rule that was violated, and the seriousness of the error in the particular

546

case, and the reputation of judicial proceedings if the error stands uncorrected — all with an eye toward avoiding manifest injustice." *Gov't of the V.I. v. Smith*, 949 F.2d 677, 681, 27 V.I. 332 (3d Cir. 1991) (quoting *United States v. Thame*, 846 F.2d 200, 205 (3d Cir. 1988)). In this case, the Superior Court first instructed the jury that it may only convict Phipps of a charge if it finds him guilty beyond a reasonable doubt with respect to all elements of a crime, and informed the jury that to convict Phipps of assault in the third degree it had to find that the People proved beyond a reasonable doubt that Phipps used "unlawful violence" against Rosario. Afterwards, the Superior Court instructed the jury with respect to self-defense as follows:

> Any person about to be injured may make reasonable — I'm sorry, may make resistance sufficient to prevent an illegal attempt by force to take or injure property in his lawful possession, or an offense against his person or his family or some member thereof. Any person in aide or defense of the person about to be injured may make resistance sufficient to present — prevent the offense. . . .
>
> If a person reasonably believes that force is necessary to protect himself or another person from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he is said to have acted in self-defense or defense of another. . . . Self-defense which involves using force likely to cause death or great bodily harm is justified only if the person reasonably believe[s] that such force is necessary to protect himself or a third party from what he reasonably believes to be a substantial risk of death or great bodily harm.

(Trial Tr., vol. 2 at 62-63.)[2] Afterwards, the Superior Court informed the jury that

> Defendant had pleaded not guilty of each of the charges contained in the Information. This plea of not guilty puts in issue each and every of the essential elements of the offenses charged in the Information, and imposes on the People the burden of establishing each of these elements by proof beyond a reasonable doubt. Moreover, *defendant*

---

[2] Because the parties' Joint Appendix does not contain any page numbers, all citations to the record are exclusively to the trial transcript.

contends that he is not guilty of the crimes charged because he was acting in self-defense.

(*Id.* at 64.) At no point, however, did the Superior Court expressly instruct the jury that the People possessed the burden of disproving Phipps's self-defense claim beyond a reasonable doubt.

██ Although at least one appellate court has found that a virtually identical jury instruction is not so "fundamentally unfair" as to require reversal notwithstanding a defendant's failure to object to the instruction, *see Paprocki v. Foltz*, 869 F.2d 281, 285-86 (6th Cir. 1989), we agree with the majority of appellate courts that have found that jury instructions that do not explicitly state that the government bears the burden of disproving self-defense — absent some exceptions that are not applicable here[3] — require reversal under the plain error standard of review even if the jury was instructed that the government must prove beyond a reasonable doubt that the violence was unlawful. *See, e.g., Smith*, 949 F.2d at 682-86; *Guthrie v. Warden, Maryland Penitentiary*, 683 F.2d 820, 824 (4th Cir. 1982); *People v. Janes*, 982 P.2d 300, 302-04 (Colo. 1999); *Raines v. State*, 79 Haw. 219, 900 P.2d 1286, 1292 (1995); *State v. Evans*, 278 Md. 197, 362 A.2d 629, 637 (1976); *State v. Garcia*, 18 P.3d 1123, 1129, 2001 UT App 19 (2001). First, it is well-established, under prior precedents

---

[3] *See, e.g., Gov't of the V.I. v. Rosa*, 399 F.3d 283, 295 (3d Cir. 2005) (holding that erroneous jury instruction did not constitute plain error because jury's acquittal on some counts and conviction on other counts demonstrated it correctly understood that government had burden of proof on issue of proving malice); *State v. Garcia*, 18 P.3d 1123, 1129, 2001 UT App 19 (2001) ("The law . . . requires a trial court to adequately instruct the jury about the burden of proof for self-defense when the defendant presents the quantum of evidence necessary to assert self-defense); *Latalladi v. People*, 51 V.I. 137, 143-44 (V.I. 2009) (applying invited error doctrine to jury instructions).

Although Phipps was acquitted on four counts of the six part information — those relating to his altercations with Davis and Donovan — those acquittals had no relation to self-defense because self-defense was only asserted with respect to Rosario. Furthermore, because it was uncontroverted that Rosario had been the initial aggressor in the bar, and Phipps testified that Rosario chased him from the bar to his car and that he had to swing the machete to get away from him, a quantum of evidence existed for the jury to acquit Phipps based on self-defense. Finally, after holding oral arguments in this matter, this Court required the parties to submit copies of their proposed jury instructions to this Court, which revealed that Phipps had not invited the error by requesting that the Superior Court instruct the jury in such a manner.

construing Virgin Islands law which are binding on the Superior Court,[4] that "when self-defense has been placed in issue, the jury must be instructed separately regarding the burden of proof on that issue." *Smith*, 949 F.2d at 681 (citing *United States v. Corrigan*, 548 F.2d 879 (10th Cir. 1977)). Thus, the Superior Court's error in this case was plain. *See Murrell v. People*, S.Ct. Crim. No. 2009-0064, 2010 V.I. Supreme LEXIS 27, *48 (V.I. Sept. 13, 2010) (holding error is "plain" when prior precedent directly resolves the issue). Moreover, we agree with the Third Circuit that the error affects substantial rights and could adversely affect the integrity of judicial proceedings because "a juror could reasonably have concluded that it was not necessary for the prosecution to prove the absence of self-defense beyond a reasonable doubt, and that the defendant bore the burden of proving the justification of self-defense instead," which "could have been critical to the outcome of the case" given that "[t]he question of self-defense was central to the defendant's case." *Smith*, 949 F.2d at 681-82. Accordingly, this Court reverses the Superior Court's January 29, 2008 Judgment and Commitment and remands this matter to the Superior Court for a new trial.

## C. The Superior Court Did Not Err When it Refused a Simple Assault Instruction

■ Given this Court's holding that Phipps is entitled to a new trial due to the Superior Court's erroneous self-defense jury instruction, it would ordinarily not be necessary for this Court to consider any of the other errors Phipps has raised in his appellate brief, including Phipps's claim that the Superior Court should have also instructed the jury that it could find him guilty of the lesser-included offense of simple assault rather than assault in the third degree. "However, it is well established that an appellate court, when ordering a remand to a trial court for further proceedings based on its disposition of one issue may, in the interests of judicial economy, nevertheless consider other issues that, while no longer affecting the outcome of the instant appeal, are 'likely to recur on remand.' " *Smith v. Turnbull*, S.Ct. Civ. No. 2007-0104, 2010 V.I. Supreme LEXIS 34, *8 (V.I. Sept. 14, 2010) (quoting *Rivera-Flores v.*

---

[4] "[D]ecisions rendered by the Third Circuit . . . are binding upon the Superior Court even if they would only represent persuasive authority when this [C]ourt considers an issue." *In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009).

*P.R. Tel. Co.*, 64 F.3d 742, 749 (1st Cir. 1995)). Accordingly, given the likelihood that Phipps will also seek such an instruction on remand, this Court, in the interests of judicial economy, shall exercise its discretion to address this additional issue as part of this appeal.[5]

■ To be convicted of simple assault under section 299(1) of title 14, a defendant must commit an "assault," which is defined as "any unlawful violence upon the person of another with intent to injure him, whatever be the means or degree of violence used," 14 V.I.C. § 292, while to obtain a conviction for assault in the third degree, the People are required to prove the additional element that the assault was "with a deadly weapon." 14 V.I.C. §297(2). Because the People must prove every element of simple assault in order to obtain a conviction under section 297(2), courts have recognized that simple assault is typically a lesser included offense of third degree assault. *See, e.g., Gov't of the V.I. v. Brown*, 685 F.2d 834, 841 (3d Cir. 1982); *Jadooram v. Gov't of the V.I.*, No. D.C. Crim. App. 2002, 2004 U.S. Dist. LEXIS 10055, *3 n.1 (D.V.I. App. Div. Mar. 8, 2004) (unpublished); *Gov't of the V.I. v. Williams*, 23 V.I. 125, 127 (D.V.I. 1987) (unpublished). Nevertheless, for a jury to convict a defendant on a lesser included offense that is not charged in the information, there must

---

[5] In his appellate brief, Phipps also contends that the Superior Court (1) committed error when it allowed his case to proceed to trial even though he was arrested without a warrant; (2) erred when it denied his pre-trial motion to compel disclosure of Donovan's internal affairs file; (3) admitted a photograph of Rosario in violation of the Confrontation Clause and Federal Rule of Evidence 403; (4) entered an illegal sentence; and (5) denied his motion for a new trial. However, it is not necessary for this Court to determine whether the Superior Court erred in allowing Phipps's prosecution to proceed because, even if Phipps's allegations are correct, United States Supreme Court precedent would preclude voiding his conviction as a remedy, but only authorize suppression of any evidence obtained as the "fruit" of the illegal arrest as the remedy, which did not occur in this case. *See Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S. Ct. 854, 865, 43 L. Ed. 2d 54 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 421 (1886)); *see also McDonald v. State*, 10 Md. App. 258, 269 A.2d 193, 195 (1970) (collecting cases). Moreover, because of this Court's decision to grant Phipps a new trial, it is not necessary for this Court to address any alleged errors with his sentence or with the Superior Court's denial of his motion for a new trial. In addition, the Superior Court's admission of Rosario's photograph and — to the extent it has not been mooted by Phipps's acquittals with respect to all counts relating to Donovan — its denial of Phipps's motion to compel cannot be reviewed by this Court because Phipps has failed to include all necessary documents in the Joint Appendix or to develop a complete record in the Superior Court. Finally, this Court's recent decision in *Rivera v. People*, 53 V.I. 589 (V.I. 2010), conclusively established that a photograph that contains no markings or statements by the alleged declarant is not "testimonial" and thus admissible notwithstanding the Confrontation Clause.

be "a reasonable ground of doubt" for the jury to find that the defendant committed the lesser offense but not the higher offense. 5 V.I.C. § 3635.

■ As the Superior Court correctly observed when it denied Phipps's requested jury instruction, the issue of whether Phipps possessed a machete during the incident was never in dispute since Phipps had admitted this fact during his trial testimony. (Trial Tr., vol. 1, 218; 232; 237-38.) Consequently, a rational jury could only acquit Phipps of third degree assault, yet still find him guilty of simple assault, if it found that a machete is not a deadly weapon. We agree with other appellate courts that the remote possibility that a jury may find a machete is not a deadly weapon is not a reasonable ground for a judge to instruct the jury on a lesser include offense. *See State v. Gamboa*, 137 Wn. App. 650, 154 P.3d 312, 314 (2007) (rejecting argument that lesser included offense instruction was warranted because jury could not reasonably conclude that machete was not a deadly weapon). Thus, Phipps was not entitled to a lesser included offense jury instruction and, accordingly, the Superior Court did not abuse its discretion when it denied the requested instruction.

## III. CONCLUSION

Under Virgin Islands law, the People possessed the burden of disproving beyond a reasonable doubt Phipps's claim that he acted in self-defense. Thus, the Superior Court's failure to instruct the jury on the burden of proof not only constituted plain error, but affected Phipps's substantial rights and places the fairness of Phipps's trial into question. Accordingly, even though the Superior Court did not err when it declined to instruct the jury on the lesser-included offense of simple assault, this Court reverses Phipps's convictions and remands this matter to the Superior Court for a new trial.

SWAN, J., concurring.

Jonathan Phipps ("Phipps") was involved in an altercation with a male. Several witnesses to the altercation testified that Phipps was the aggressor. Phipps claimed that he acted in self-defense. Phipps was prosecuted and convicted of multiple counts of assault in the third degree and using a dangerous weapon during the commission of a crime of violence. Phipps appeals his convictions on numerous grounds, including the trial court's failure to give a final jury instruction on the People's burden of proof on his claim of self-defense. Because I find error in the trial court's final

instructions to the jury, I would reverse Phipps's convictions. I write separately, however, to address all the issues raised on appeal.

## I. FACTS AND PROCEDURAL HISTORY

The incident, which prompted the filing of criminal charges against Phipps, occurred on Sunday, June 4, 2006, in the immediate vicinity of the Sky High Bar ("the Bar") in St. Thomas, U.S. Virgin Islands. (Trial Tr. vol. I, 38, Nov. 27, 2007.) Sometime between 2:00 a.m. and 5:00 a.m. that Sunday morning, Yudelkys Mateo Beillard ("Beillard"), who was at the Bar with her boyfriend, Edwin Ramon Bencosme Rosario ("Rosario"), had a fracas with another female patron. (*Id.* at 38-39, 203.) Beillard admitted to assaulting the unidentified female. (*Id.* at 40.) Thomas Esquerdo ("Esquerdo"), who was providing security for Sky High Bar, ejected both females from the Bar. After the fracas ended, Beillard and Rosario either returned to the Bar or remained in its immediate vicinity. (*Id.* at 66.)

At approximately 5:00 a.m., Jonathan Phipps entered the Bar. He approached Rosario and inquired about the altercation between the two females. (*Id.* at 40, 217.) After a brief conversation, both men exited the Bar, and immediately thereafter an altercation ensued between them. (*Id.* at 42.) During the altercation, Phipps returned to his vehicle and retrieved a machete that was secreted under one of the vehicle's seats. (*Id.* at 218.) Phipps testified that he retrieved the machete because he needed it to defend himself against Rosario, who had approached him in a bellicose manner with a knife. (*Id.* at 231.) Phipps testified that Rosario, armed with a knife, followed Phipps to his vehicle. (*Id.* at 218.) Phipps further testified that he swung the machete at Rosario to defend himself but could not recall whether he had lacerated Rosario with the machete. (*Id.* at 230.) Phipps could not describe either the length or size of the knife's blade, nor the color of the knife's handle. Phipps could only describe Rosario's knife as being smaller than his machete and "sufficient to take out [his] gut." (*Id.* at 233-34.) Phipps was the only witness to testify that Rosario possessed a knife.

As the staff of the Bar was preparing to close the establishment, Esquerdo exited the Bar and encountered the altercation between Phipps and Rosario. (*Id.* at 66.) Esquerdo saw Phipps as he ran towards Rosario and simultaneously swung the machete at Rosario, who was attempting to assault Phipps with his fists. (*Id.* at 66, 69-70.) Esquerdo testified that he

saw Phipps "cut" Rosario. (*Id.* at 71.) Esquerdo immediately discharged mace[1] spray at both men in an attempt to quell the altercation between them; however, at that instance another male, who had been drinking at the Bar, appeared on the scene and identified himself as a police officer, saying "[f]reeze, I'm a police officer. Put the weapon down." (*Id.* at 66, 71-72.) The police officer, Leroy Donovan ("Officer Donovan"), was off-duty and in plain clothes. (*Id.* at 99-100.) Despite being sprayed with mace and despite Officer Donovan identifying himself as a police officer, Phipps and Rosario continued their altercation. (*Id.* at 71.)

Officer Donovan identified himself as a police officer at least twice after he arrived on the scene. Additionally, Officer Donovan observed Phipps as he assaulted Rosario with the machete. Officer Donovan proceeded to push Rosario into the street and again identified himself as a police officer. Consequently, Rosario ceased his assault upon Phipps and "quieted down." (*Id.* at 100.) Despite Officer Donovan's command to Phipps to drop his machete, Phipps continued to hold the machete in his hand. (*Id.* at 73-74, 101-02.) After Phipps refused to comply with Officer Donovan's command to drop the machete, Officer Donovan, standing approximately eight feet from Phipps and having already drawn his weapon at the time he identified himself as a police officer, took aim at Phipps's chest and fired eight shots. (*Id.* at 101, 103-04.) The shots missed Phipps's chest; however, one bullet struck Phipps's left leg and two bullets struck his right leg, causing Phipps to fall to the ground with the machete in his hand. (*Id.* at 110, 154.) Less than one minute elapsed between the time Esquerdo sprayed both men with mace, and the time Officer Donovan shot Phipps. (*Id.* at 106.) Because of his gunshot injuries, Phipps was hurriedly transported by ambulance to the hospital. (*Id.* at 114.)

Detective Diana Brown ("Detective Brown"), a member of the Virgin Islands Police Department's Internal Affairs Unit, investigated the June 4,

---

[1] The record submitted on appeal indicates that both men were sprayed with "mace" — a genericized trademark commonly used to refer to a variety of personal defense sprays. However, the record does not reveal the specific substance with which Esquerdo sprayed Phipps and Rosario.

2006 shooting of Phipps.[2] (*Id.* at 140-41.) As part of the investigation, Detective Brown interviewed Phipps at Roy Lester Schneider Hospital ("the Hospital") on June 6, 2006. (*Id.* at 141, 149.) Phipps, who was not under arrest at the time of his hospital interview and who was then considered the victim, was not given any *Miranda*[3] warnings. However, he chose to voluntarily give a statement to Detective Brown. (*Id.* at 142.) Although Phipps indicated to Detective Brown that he was from the Dominican Republic and his primary language was Spanish, his statement to Detective Brown was taken in English and transcribed in English. (*Id.* at 156.) Phipps contended that, unprovoked and without warning, Rosario assaulted him with a bottle. (*Id.* at 150.) However, both Beillard and Esquerdo testified that the Bar did not serve drinks in bottles and that Rosario was never seen with a bottle, during his altercation with Phipps. (*Id.* at 51, 66.) Phipps revealed to Detective Brown that, "I pulled out a machete and somebody (I don't know who) sprayed something in my face." (*Id.* at 151.) Phipps continued, stating:

> I heard somebody said — say, 'Stop'. I was — I was still going back I couldn't see anything, then he shoot me. I got spray in my face I couldn't see nothing. Then after I got shot I fell down and the machete fell out my hands. The police was with his gun out trying to keep away everybody and the guy came from behind the police and began kicking me. Then a guy began saying, 'he kicking him' and came and took the guy off me.

(*Id.* at 151-52.) Detective Brown concluded that based upon the findings of her investigation, Officer Donovan did not violate any "rules, regulations, procedures, or policies of the Virgin Islands Police Department[.]" (*Id.* at 164.) Phipps's trial testimony was significantly similar to his first statement to police, except for the additional information that Rosario had a knife during the altercation, which information was also in his second statement to police. (*Id.* at 218.)

Delbert Phipps ("Detective Phipps"), an investigator with the Virgin Islands Police Department's Homicide Division, Major Crime Unit,

---

[2] Detective Brown testified that Internal Affairs conducts investigations concerning complaints about police officers and instances when an officer is involved in an incident. (Trial Tr. vol I, 140.)

[3] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

conducted a second investigation into the altercation of June 4, 2006.[4] (*Id.* at 165.) Detective Phipps travelled to the Hospital to interview Phipps on June 13, 2006. (*Id.* at 166.) At the time of that interview, Phipps had become the target of the investigation. (*Id.* at 167, 177.) Prior to conducting the interview with Phipps, Detective Phipps read Phipps his *Miranda* rights in English. (*Id.* at 167.) Thereafter, Phipps was asked whether he understood what his rights are, and he answered in the affirmative. (*Id.* at 168.) Phipps immediately waived his constitutional rights and gave Detective Phipps a second statement about the June 4, 2006 altercation, which was simultaneously reduced to writing. (*Id.* at 167, 170.) Phipps's second statement informs that he was at the Bar attempting to purchase a drink when Rosario, who Phipps knew by the name of "Ube," began to push him. (*Id.* at 173.) Phipps stated that Rosario had a bottle, which he threw at Phipps. (*Id.* at 174.) Therefore, Phipps pushed Rosario out of the Bar. (*Id.*) Although Phipps testified that he did not remember giving a statement to the police, *id.* at 219, the signed statement that he gave to Detective Phipps on June 13, 2006, which was admitted into evidence, explicitly states that he ran after Rosario and swung the machete at him. (*Id.* at 174.) The remainder of Phipps's second statement is identical to his previous statement that he gave to Detective Brown. On June 16, 2006, Detective Phipps returned to the Hospital and arrested Phipps for his actions at the Bar on June 4, 2006. (*Id.* at 177.) On June 27, 2007, Phipps was charged in a six-count Information with the following crimes: Counts I and III, Assault in the Third Degree in violation of title 14, section 297(2) of the Virgin Islands Code; Count V, Assault in the Third Degree in violation of title 14, section 297(5) of the Virgin Islands Code; and Counts II, IV and VI, Using a Dangerous Weapon During the Commission of a Crime of Violence in violation of title 14, section 2251(a)(2)(B) of the Virgin Islands Code. (J.A. at Exhibit C.)

A jury trial was held on November 27 and 28, 2007, which culminated in Phipps being acquitted of Counts I, II, V and VI, but being convicted of Counts III and IV. Phipps filed a Motion for a New Trial challenging

---

[4] Detective Phipps testified that the Homicide Division investigates shootings by law enforcement personnel to determine whether any wrongdoing occurred. (Trial Tr. vol I, 166.) He further testified that the Homicide Division also conducts Internal Affairs departmental investigations. (*Id.*)

the sufficiency of the evidence presented by the People of the Virgin Islands ("People") in support of Phipps's convictions.

At the January 10, 2008 sentencing, the trial court denied Phipps's Motion for a New Trial. Phipps was sentenced to one year of incarceration and a fine of five hundred dollars on Count III. On Count IV, Phipps was sentenced to serve seven years and six months of incarceration and fined ten thousand dollars. The trial court suspended the ten thousand dollar fine. The trial court ordered the periods of incarceration on Counts III and IV to be served concurrently. The Judgment and Commitment was entered on January 30, 2008. Phipps prematurely filed a timely Notice of Appeal on January 14, 2008.[5]

## II. ISSUES

Phipps raises a plethora of issues on appeal; namely:

A.  Whether the trial court committed error in allowing this case to proceed to trial even though Phipps was arrested without a warrant.

B.  Whether the trial court committed error in denying Phipps's pre-trial Motion to Compel disclosure of Police Officer Leroy Donovan's internal affairs file that is maintained by the Virgin Islands Police Department.

C.  Whether the trial court committed error by admitting into evidence photographs depicting Rosario's injury, which he sustained in the altercation with Phipps.

D.  Whether in its final instructions to the jury, the trial court committed error in failing to instruct the jury on the People's burden of proof in opposing Phipps's claim of self-defense.

E.  Whether the trial court committed error when it refused to instruct the jury on the crime of simple assault, as a lesser-included offense of assault in the third degree.

F.  Whether the trial court committed error in sentencing Phipps to serve seven years and six months of incarceration pursuant to title 14, sections 2251 and 2254 of the Virgin Islands Code.

---

[5] Rule 5(b) of the Virgin Islands Supreme Court Rules provides, in pertinent part; "[a] notice of appeal filed after the announcement of a decision, sentence, or order — but before entry of the judgment or order — is treated as filed on the date of and after the entry of judgment." V.I. S.CT.R 5(b)(1).

G. Whether the trial court committed error when it denied Phipps's Motion for a New Trial based on insufficiency of the evidence educed at trial.

## III. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this appeal pursuant to title 4, section 32 of the Virgin Islands Code. Specifically, section 32(a) vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court[.]" V.I. CODE ANN. tit. 4, § 32(a).

The standards of review applicable to the issues on appeal are as follows: The trial court's evidentiary rulings are reviewed for abuse of discretion. *United States v. Basham*, 561 F.3d 302, 325 (4th Cir. 2009). The trial court's denial of Phipps's Sixth Amendment claim is also reviewed for abuse of discretion. *United States v. Jimenez*, 513 F.3d 62, 76 (3d Cir. 2008) (quoting *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006)). If I determine that there was an abuse of discretion, I will proceed to determine whether the abuse of discretion was harmless. *United States v. Casoni*, 950 F.2d 893, 902 (3d Cir. 1991); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) ("the constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman [v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]* harmless-error analysis."). The trial court's refusal to give a jury instruction on the defendant's theory of the case is reviewed *de novo*. *United States v. Wagner*, 834 F.2d 1474, 1486 (9th Cir. 1987). However, errors that are not brought to the trial court's attention in a timely manner are subject to plain error review. *Puckett v. United States*, 556 U.S. 129, 129 S.Ct. 1423, 1428-29, 173 L. Ed. 2d 266 (2009) (citing *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)). The trial court's interpretation of Virgin Islands law is subject to plenary review. *Gov't of the V.I. v. Smith*, 949 F.2d 677, 680 (3d Cir. 1991). Review of issues concerning questions of statutory interpretation is plenary. *Morgan v. Gay*, 466 F.3d 276, 277 (3d Cir. 2006).

## V. DISCUSSION

### A. No Error Was Committed by the Trial Court Allowing the Case to Proceed to Trial When Phipps was Arrested Without a Warrant, Because the Police Had Probable Cause to Arrest Phipps

Phipps argues that the trial court committed plain error in allowing this case to proceed to trial without a prior determination of probable cause. (Br. of Appellant 11-12.) Specifically, Phipps argues:

> [i]t is uncontested that Detective Phipps did not have probable cause or reasonable cause to arrest the Appellant, because he did not complete his investigation until June 20, 2006, at which time he filed the criminal [I]nformation with his affidavit of probable cause. Hence, there was no reasonable or probable cause to arrest the Appellant on June 13, 2006.

(*Id.* at 11.) In support of Phipps's appeal, he filed an unnumbered 370-plus page Joint Appendix containing the Certified Docket Entries, the Judgment and Commitment, Phipps's Notice of Appeal, a copy of the Information, Phipps's Presentence Report, the Trial Transcript, the Sentencing Transcript and a number of pamphlets. Phipps conspicuously omitted from the Joint Appendix the pertinent Arrest Report, the Probable Cause Fact Sheet and the transcript of the Initial Hearing following Phipps's arrest on June 19, 2006. These omitted documents and transcripts are relevant to my review of the trial court's determination of probable cause for Phipps's arrest. Crucially, pursuant to Virgin Islands Supreme Court Rule 10(b), Phipps was obligated to file those documents with this Court. Yet, he exasperatingly failed to file all of them. I cannot sufficiently underscore the necessity of having a complete trial record, including all relevant transcripts, in order to address the issues raised on appeal. Fortunately, one of the matters underlying the issue of probable cause for Phipps's arrest is a matter of statutory interpretation; therefore, I will evaluate the merits of Phipps's claim.

In 1925, the Supreme Court of the United States recognized the rule that a police officer can lawfully arrest someone without a warrant when that person is believed to have committed a felony and such belief is supported by probable cause. *Carroll v. United States*, 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543 (1925). In this jurisdiction, the rule is codified in title 5, section 3562 of the Virgin Islands Code, which provides in pertinent part:

A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person —

. . .

(2) when a person has committed a felony, although not in his presence;

(3) *when a felony has in fact been committed and he has reasonable cause for believing the person to have committed it*;

(4) on a charge made, upon reasonable cause, of the commission of a felony by the party; []

. . . .

5 V.I.C. § 3562 (emphasis added). The probable cause requirement, in this context, emanates from the Fourth Amendment "right of the people to be secure in their persons . . . against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The probable cause rule is derived from the Fourth Amendment, which "requires that a warrantless arrest be supported by probable cause, which exists when *at the moment of arrest* police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." *United States v. Oropesa*, 316 F.3d 762, 768 (8th Cir. 2003) (internal quotation marks and citations omitted) (emphasis added).

A review of the governing law on probable cause emphasizes two salient points. First, completely contrary to Phipps's argument, probable cause is not necessarily assessed at the time an investigation is deemed completed. Rather, probable cause is assessed at the time the arrest is made. *Gov't of the V.I. v. Hernandez*, 508 F.2d 712, 715, 11 V.I. 497 (3d Cir. 1975); *see also Oropesa*, 316 F.3d at 768. Second, no special document or filing is required at the time of a warrantless arrest to verify that probable cause exists. A warrantless arrest is permissible where "at [the time of arrest,] the facts and circumstances within the[ officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (defendant) had committed or was committing an offense." *Hernandez*, 508 F.2d at 715 (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)) (internal quotation marks omitted).

Crucially, Phipps does not allege that Detective Phipps lacked probable cause to arrest him. Rather, Phipps argues that "Detective Phipps did not

have probable cause or reasonable cause to arrest the Appellant [on June 13, 2006] because he did not complete his investigation until June 20, 2006 . . . ." (Br. of Appellant 11.) The facts surrounding Phipps's arrest are that Detective Phipps presented an affidavit to the trial court verifying that probable cause existed for that court to issue a warrant for Phipps's arrest. Importantly, the trial court declined to consider the request for an arrest warrant and instructed Detective Phipps that he should arrest Phipps if he had probable cause. The trial court never ruled or confirmed that Detective Phipps lacked probable cause to arrest Phipps.

The trial court's instruction to Detective Phipps was not erroneous. *See* 5 V.I.C. §3562; *see also United States v. Watson*, 423 U.S. 411, 417, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976) ("The necessary inquiry, therefore, was not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest."); *Ford v. United States*, 352 F.2d 927, 929, 122 U.S. App. D.C. 259 (D.C. Cir. 1965) ("In *Draper v. United States*, 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959) a warrantless arrest on probable cause was sustained notwithstanding it appears there was time to obtain a warrant."). Therefore, the only remaining issue is whether Detective Phipps had probable cause to arrest Phipps at the time of the arrest.

"Whether the police had probable cause to arrest is a question of law and is therefore reviewed de novo." *United States v. Abdi*, 463 F.3d 547, 555 (6th Cir. 2006). To determine whether the police had probable cause at the time of Phipps's arrest, I "examine the events leading to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable officer, amount to probable cause." *Id*. at 557. To reiterate, although Phipps failed to include the Arrest Report, Probable Cause Fact Sheet and Initial Hearing transcript in the record on appeal, the trial record contains sufficient information, which allows me to determine whether the police had probable cause to arrest Phipps on June 16, 2006.

Detective Phipps went to the Hospital on June 13, 2006 to interview Phipps, concerning Phipps's altercation with Rosario and to seek information for the Internal Affairs investigation of Officer Donovan, purportedly because of Officer Donovan's role in the June 4, 2006 incident at the Bar. Detective Phipps Mirandized Phipps and recorded his voluntary statement. In his statement, Phipps recounted his version of the June 4, 2006 incident at the Bar, including his use of a machete against

Rosario in their altercation. Moreover, the same altercation involved third degree assault, a felony, and possession of a dangerous or deadly weapon. Phipps's statement or admission to Detective Phipps at the Hospital could have been used to support probable cause for his arrest. Also, Detective Phipps had the benefit of several eyewitnesses' statements about the altercation between Rosario and Phipps. Accordingly, I find that an objectively reasonable police officer in Detective Phipps's position on June 16, 2006 could have determined that probable cause existed to arrest Phipps for a felony committed outside the presence of Detective Phipps. Moreover, Phipps does not address what facts Detective Phipps knew or what facts were in Detective Phipps' possession at the time of Phipps's arrest and why the facts Detective Phipps relied upon were insufficient for probable cause to arrest Phipps. Therefore, Phipps's argument that the trial court committed clear error in allowing the case to proceed when Phipps was arrested without a warrant is meritless. Phipps is reminded that the quantum of proof needed for probable cause is significantly and overwhelmingly less than the quantum of proof needed for a conviction. *See Draper*, 358 U.S. at 311. Likewise, Phipps is further reminded that a court may rely on hearsay information in concluding that probable cause existed to arrest him without a warrant. *Id.* at n.4. The Advisory Committee Notes to the 1974 amendments to Rule 4 of the Federal Rules of Criminal Procedure explicitly state, "[t]he amendments are designed to achieve several objectives: (1) to make explicit the fact that the determination of probable cause may be based upon hearsay evidence . . ." FED. R. CRIM. P. 4 advisory committee's note. It is a common occurrence or practice of police, after an arrest of a suspect, to continue the investigation and gather evidence for trial, long after a court's findings of probable cause for arresting the same suspect. Therefore, the trial court did not commit error by allowing the case to proceed to trial, when Phipps was arrested without a warrant, because the police had probable cause to arrest Phipps at the time of his arrest.

**B. Phipps Failed to Submit a Sufficient Record on Appeal to Support His Claim That the Trial Court Committed Error in Denying His Pre-trial Motion to Compel Disclosure of Officer Donovan's Internal Affairs File That is Maintained by the Virgin Islands Police Department**

Phipps urges this Court to find that the trial court committed plain error by denying his pre-trial Motion to Compel the disclosure of Officer

561

Donovan's internal affairs personnel file and his file on any other internal affairs investigations. (Br. of Appellant 17.) I am cognizant that nothing in the record before this Court, including the Certified Docket Entries, reflects that the trial court actually denied Phipps's Motion to Compel Disclosure. Also, I find disconcerting that Phipps failed to include in the Joint Appendix or Amended Joint Appendix, any modicum or iota of proof concerning the trial court's decision, or lack thereof, regarding Phipps's Motion to Compel disclosure of Officer Donovan's internal affairs file.

Rule 10(b) of the Virgin Islands Supreme Court Rules unambiguously states that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant *shall include* in the record a transcript of all evidence relevant to such finding or conclusion." VISCR 10(b)(1) (emphasis added). Rule 10(c) of the Virgin Islands Supreme Court Rules instructs that, where "no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." VISCR 10(c). Thus, regardless of whether a transcript of the trial court proceedings was available, and particularly in the event that the trial court failed to address this issue, Phipps had an obligation to file a statement explaining the relevant proceedings in the trial court. Because Phipps has failed to provide either a transcript or an explanatory statement of the trial record, I am confronted with a record that is wholly inadequate to consider the issue raised by Phipps. *See Deines v. Vermeer Manufacturing Co.*, 969 F.2d 977, 979 (10th Cir. 1992). I will not engage in speculation or conjecture to determine any issue before this Court. Accordingly, I conclude that Phipps has failed to substantiate his claim concerning his Motion to Compel. *See* VISCR 15.

### C. The Trial Court Did Not Commit Error By Admitting in Evidence Photographs of Rosario, Which Depicted His Injury, Because the Photographs Were Not Testimonial

On appeal Phipps argues that a photograph of Rosario should not have been admitted into evidence; rather, it should have been excluded under

Rule 403 of the Federal Rules of Evidence.[6] Phipps also argues that admission of the photograph of Rosario violated his Sixth Amendment right to confront the witnesses against him. Specifically, Phipps asserts that at trial the People:

> introduced the photograph of Mr. Rosario (showing a slight cut of Mr. Rosario's arm) for testimonial purposes, although counsel for the Appellant had allowed the ... picture of Mr. Rosario (without the slight cut on arm) for impeachment purposes into evidence only ... and the trial court failed [t]o give the jury a limited [sic] instruction [that the photograph was admitted solely for impeachment purposes.]
>
> The introduction of Mr. Rosario's photograph was in violation of the Federal Rule of Evidence Rule 403[.]

(Br. of Appellant 14-15) (emphasis omitted). Phipps contends that the photograph should have been excluded under Rule 403 because it was confusing to the jury. (Br. of Appellant 15-16.) The record submitted on appeal does not reflect that Phipps advanced any Rule 403 argument before the trial court. Phipps's entire Rule 403 argument on appeal is as follows: "It is obvious that the jury was confused by the People's evidence because the jury discounted the People's eyewitnesses and victims, and only convicted Phipps on the counts of the Information relating to Mr. Rosario." (Br. of Appellant 15.) This assertion falls substantially short of the requirement in Rule 22(a)(5) of the Virgin Islands Supreme Court Rules that an appellant's brief contain an argument with respect to each issue presented to the Court. VISCR 22(a)(5). Therefore, Phipps is deemed to have waived his appeal of the admission of the photograph of Rosario to the extent he alleges a violation of Rule 403 of the Federal Rules of Evidence. *Gass v. V.I. Telephone Corp.*, 311 F.3d 237, 246, 45 V.I. 649 (3d Cir. 2002).

---

[6] **Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403.

Phipps second argument on this issue is confounding; however, I discern that he contends the following: Phipps objects to the admission into evidence of a photograph depicting a slight cut on Rosario because, as Phipps contends, the photograph is purportedly testimonial evidence. Phipps therefore asserts that its admission into evidence violated his Sixth Amendment right to confrontation.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. CONST. amend. VI. The Confrontation Clause affords criminal defendants the right both to confront and to cross-examine adverse witnesses. *See Maryland v. Craig*, 497 U.S. 836, 846, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) (Confrontation Clause encompasses the right to "personal examination . . . [and] insures that the witness will give his statements under oath . . . [and] submit to cross-examination . . . .") (internal quotation marks and citations omitted); *see also United States v. Johnson*, 297 F.3d 845, 856 n.4 (9th Cir. 2002) (trial court's limiting instructions restricting the scope of witness testimony at a joint trial caused the witness not to be a "witness against" the co-defendant; therefore, the co-defendant had no Sixth Amendment right to cross-examine the witness).

The Supreme Court of the United States held in *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), that the Confrontation Clause specifically applies to the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Conversely, "nontestimonial statements do not violate the Confrontation Clause and are admissible as long as they are subject to a firmly rooted hearsay exception or bear an adequate indicia of reliability." *Jimenez*, 513 F.3d at 77 (citing *Albrecht v. Horn*, 485 F.3d 103, 134 (3d Cir. 2007) (internal quotation marks omitted)). Therefore, as a prerequisite to advancing his argument that his Sixth Amendment right to confrontation was violated, Phipps must first demonstrate that the evidence is testimonial. If the evidence is testimonial, the Confrontation Clause applies.

A "witness" is one who "bear[s] testimony." *Crawford*, 541 U.S. at 51. "Testimony" is "typically, a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. The *Crawford* court

provided three examples of testimonial statements; (1) *"ex parte* in-court testimony or its functional equivalent . . ."[7]; (2) "extrajudicial statements contained in formalized testimonial materials . . ."[8]; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[9] I concur with the People that the photograph of Rosario is not testimonial under *Crawford*. A photograph is intrinsically separate from what or who is depicted in the photograph. Moreover, a photograph is demonstrative evidence and an inanimate object. It cannot give testimony or make a statement, nor can it be cross-examined. Therefore, a photograph is entirely outside the purview of *Crawford*.

At trial, the following exchange transpired between Phipps's Counsel and Beillard:

[ATTORNEY PAYTON]: Okay, could you look at Five. Exhibit Five. Can you identify the person in Five?

. . .

[BEILLARD]: Yes.

[ATTORNEY PAYTON]: Could you please tell the jury who that person is?

[BEILLARD]: Ex-boyfriend.

[ATTORNEY PAYTON]: And what is his name?

. . .

[BEILLARD]: Edwin Ramon Bencosme Rosario.

[ATTORNEY PAYTON]: Okay. And look at Five A.

[BEILLARD]: Yes.

[ATTORNEY PAYTON]: And who is that person?

[BEILLARD]: Edwin.

[ATTORNEY PAYTON]: Edwin who? You have to explain to the jury?

[BEILLARD]: He was my boyfriend.

. . .

---

[7] *Crawford*, 541 U.S. at 51 (internal quotation marks omitted).
[8] *Id.* at 51-52 (internal quotation marks and citation omitted).
[9] *Id.* (internal quotation marks and citation omitted).

[ATTORNEY PAYTON]: Miss Davis, I show you what has been marked as Defense Exhibit Number 50. Could you identify that document?

[BEILLARD:] Yes.

[ATTORNEY PAYTON]: And what is that document?

[BEILLARD]: License from Santo Domingo, I think so.

[ATTORNEY PAYTON]: And whose picture is that?

[BEILLARD]: My ex-boyfriend.

[ATTORNEY PAYTON]: And what is his name?

[BEILLARD]: Edwin Rosario Ramon.

. . .

[ATTORNEY PAYTON]: Miss Davis, . . . can you identify Defense Exhibit Number 51, and what is that?

[BEILLARD]: My ex-boyfriend.

[ATTORNEY PAYTON]: And what name is attached to that document?

[BEILLARD]: Here says Juan Rosario Orengo.

[ATTORNEY PAYTON]: Pardon me?

[BEILLARD]: Juan Rosario Orengo.

[ATTORNEY PAYTON]: Orengo, not Rosario?

(Trial Tr. 202-04.) The People's Exhibits Five and Five A were used by Phipps in his examination of Beillard and were admitted in evidence without objection from Phipps's Counsel. Phipps's Counsel utilized and moved for the admission of Defense Exhibits Fifty and Fifty-One. Both People's Exhibit Five and Defense Exhibit Fifty-One are photographs of Rosario. Defense Exhibit Fifty-One is a document that bears a name other than "Edwin Ramon Bencosme Rosario" or an abbreviated version thereof. Before the witness was dismissed, the trial court admonished the jury, concerning Beillard's testimony about Defense Exhibits Fifty and Fifty-One, stating:

> . . . Ladies and gentlemen of the jury, I have admitted these two Defendant's Exhibits, [Fifty] and [Fifty-One] for a limited purpose, that is to impeach or to question, put in question, the credibility of this witness. You are to consider them for that purpose only and for no other purpose in this case.

(*Id.* at 208.)

The Uniform Rules of Evidence, not the Federal Rules of Evidence, were generally applicable in the Superior Court during the trial in this case and at the time it was argued on appeal.[10] Rule 932 of the Uniform Rules of Evidence defines "hearsay" as "a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated[.]" 5 V.I.C. § 932. People's Exhibits Five and Five A are the two photographs that were used to identify the victim[11] and to impeach Beillard. Not all impeachment evidence is necessarily testimonial under *Crawford* and thus not subject to a Confrontation Clause challenge. Moreover, the exhibits were "not offered for the truth of the matter[] asserted therein." *Jimenez*, 513 F.3d at 80. Defense Exhibits Fifty and Fifty-One,[12] as explicated by the trial court, were offered solely to attack Beillard's credibility. Phipps did not argue that the jury disregarded the trial court's instructions and considered the photographs for an improper purpose. Because the record is devoid of evidence demonstrating that People's Exhibits Five and Five A or Defense Exhibits Fifty and Fifty-One were testimonial in nature, Phipps's Sixth Amendment Confrontation Clause challenge is entirely specious.

---

[10] On March 23, 2010, in section 15(a) of Act 7161, the Virgin Islands legislature repealed the Uniform Rules of Evidence and enacted into law the Federal Rules of Evidence.

[11] At trial, the People called Beillard as its first witness. The following exchange ensued between the People and Beillard:

[ATTORNEY HOLDER]: Miss Davis, I show you what has been marked as Government's Exhibit Five . . . .
[BEILLARD]: Yes.
[ATTORNEY HOLDER]: Okay, what is that?
[BEILLARD]: A cut.
[ATTORNEY HOLDER]: No. Okay. Who is that a picture of?
[BEILLARD]: My ex-boyfriend.
[ATTORNEY HOLDER]: And is that — is that Edwin Rosario . . . [?]
[BEILLARD]: Yes.

(Trial Tr. 48.)

[12] Phipps challenged "the photograph of Mr. Rosario" but failed to state with specificity which of the four photographs of Rosario he was challenging. (*See* Br. of Appellant 14.)

## D. The Trial Court Committed Error in its Final Instructions to the Jury, by Not Providing a Final Instruction to the Jury on the People's Burden of Proof in Opposing Phipps's Claim of Self-Defense When There Was a Basis for Such a Claim

Phipps argues that the jury instructions given by the trial court "on self-defense did not specifically allocate the burden of proof, and the jury could believe that the Appellant bore the burden of proving self-defense beyond a reasonable doubt, and the Appellant's due process rights were contravened." (Br. of Appellant 20.) It is reversible error for a trial court not to give a general jury instruction on self-defense when there is an evidentiary basis for such a claim. *Smith*, 949 F.2d at 681 (3d Cir. 1991) (citing *Gov't of the V.I. v. Salem*, 456 F.2d 674, 8 V.I. 475 (3d Cir. 1972)). When an evidentiary basis for self-defense is found in the defendant's contested testimony "it is not the province of the court to accept or reject [the] testimony tending to establish self-defense[;]" rather, the defendant's credibility must be determined by the jury and the requested instruction should be given. *Salem*, 456 F.2d at 675-76 (internal quotation marks and citations omitted).

Moreover, "the Due Process Clause requires the government to prove all elements of the charged offense beyond a reasonable doubt." *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000); *see also Clark v. Arizona*, 548 U.S. 735, 766, 126 S. Ct. 2709, 165 L. Ed. 2d 842 (2006) (restating the presumption that a defendant is innocent unless the government proves, beyond a reasonable doubt, each element of the offense); *see also In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The Due Process Clause "therefore requires the government to disprove beyond a reasonable doubt any defenses that negate an element of the charged offense, *see Patterson v. New York*, 432 U.S. 197, 210, 215, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977)[.]" *Id.* The proper instruction on self-defense in the Virgin Islands necessarily encompasses both the defendant's theory of the case and the burden of disproving that theory. *See Smith*, 949 F.2d at 680 ("when self-defense is raised by a defendant, Virgin Islands law requires the prosecution to prove its absence beyond a reasonable doubt.").

When the defendant fails to object to the jury instructions on the grounds relied upon on appeal, a new trial is warranted only if the trial court made a mistake that amounts to plain error. *Smith*, 949 F.2d at 681. Because Phipps did not object to the trial court's failure to provide an

instruction on the People's burden of proof for Phipps's claim of self-defense, I review Phipps's claim for plain error.

Plain error, for purposes of Rule 52(b) of the Federal Rules of Criminal Procedure, is assessed by examining several factors including, but not limited to; "the obviousness of the error, the significance of the interest protected by the rule that was violated, the seriousness of the error in the particular case, and the reputation of the judicial proceedings if the error stands uncorrected-all with an eye toward avoiding manifest injustice . . . [and any] unfair prejudicial impact on the jury's deliberations." *Id.* (internal citations and quotations omitted).

"[I]n determining the correctness of a jury charge, a reviewing court must examine the entire charge." *United States v. Alvarez,* 755 F.2d 830, 845 (11th Cir. 1985) (citations omitted). In its final instructions to the jury, the trial court explicitly stated "[i]f the Defendant has been proven guilty beyond a reasonable doubt, say so. If the defendant has not been proven guilty beyond a reasonable doubt, say so." (Trial Tr. vol. II, 42.) The trial court specifically instructed the jury:

> As you know, the defendant has pleaded not guilty to the crimes charged in the Information . . . the defendant starts the trial with a clean slate, with no evidence at all against him, and the law presume[s] that he is innocent. The presumption of innocence stays with him unless the government presents evidence here in court that overcomes that presumption and convinces you beyond a reasonable doubt that he is guilty. This means that the defendant has no obligation to present any evidence at all or to prove to you in any way that he is innocent. It is up to the people to prove that he is guilty, and the burden stays on the People from start to finish. You must find the defendant not guilty unless the Government convinces you beyond a reasonable doubt that he is guilty.

(*Id.* at 51.) Finally, after instructing the jury on the specific elements of the crimes with which Phipps was charged, the trial court instructed the jury on self-defense:

> Any person about to be injured . . . may make resistance sufficient to prevent an illegal attempt by force to take or injure property in his lawful possession, or an offense against his person or his family or some member thereof. Any person in aid[] or defense of the person

569

about to be injured may make resistance sufficient to present — prevent the offense.

. . . .

If a person reasonably believes that force is necessary to protect himself or another person from what he reasonably believes to be unlawful physical harm about to be inflicted by another and uses such force, then he is said to have acted in self-defense or defense of another. . . . Self-defense which involves using force likely to cause death or great bodily harm is justified only if the person reasonably believe[s] that such force is necessary to protect himself or a third party from what he reasonably believes to be a substantial risk of death or great bodily harm.

(*Id.* at 62-63.) The trial court then instructed the jury that any person is justified in using force to resist an attempt to kill that person or inflict serious bodily injury upon that person. (*Id.* at 63-64.) The trial court's final instructions on the issue of self-defense reminded the jury that:

Defendant had pleaded not guilty of each of the charges contained in the Information. This plea of not guilty puts in issue each and every of the essential elements of the offenses charged in the Information, and imposes on the People the burden of establishing each of these elements by proof beyond a reasonable doubt. Moreover, defendant contends that he is not guilty of the crimes charged because he was acting in self-defense.

(*Id.* at 66.)

Despite the trial court's extensive final instructions to the jury on Phipps's claim of self-defense, the trial court failed to explicitly include, as to the People, a specific burden of proof instruction on self-defense. In *Smith*, the Third Circuit held that the trial court committed plain error when it failed to give a specific burden of proof instruction on self-defense when the defendant was charged with the crime of homicide in the Virgin Islands. *Smith*, 949 F.2d at 681-82. The Third Circuit recognized that self-defense, once invoked by the defendant, is the equivalent of an element of the crime of homicide in this jurisdiction and that the jury instructions on the burden of proof implicates the defendant's due process rights. *Id.* at 681. The Third Circuit elucidated that "because the law of the Virgin Islands specifically includes 'unlawfulness' as an

570

element of the crime of murder and provides that killing in self-defense is 'lawful,' shifting the burden of proof on this question implicates [the defendant's] due process rights." *Id.* at 683. The Third Circuit opined that, while the burden of proof was not explicitly shifted by the jury instructions, "a juror could reasonably have concluded that it was not necessary for the prosecution to prove the absence of self-defense beyond a reasonable doubt, and that the defendant bore the burden of proving the justification of self-defense instead."*Id.*; *Gov't of the V.I. v. Fonseca*, 274 F.3d 760, 766-68, 44 V.I. 336 (3d Cir. 2001).

The witnesses to the altercation testified that Phipps retrieved a machete from his vehicle while Rosario remained some distance away. Phipps testified that Rosario possessed a knife at the time he followed Phipps to his vehicle. Phipps's testimony was sufficient evidence upon which a rational jury could have found that he was acting in self-defense. Consequently, the trial court was required to instruct the jury on Phipps's claim of self-defense. Unfortunately, the trial court failed to instruct the jury that the People had the burden of proof to disprove Phipps's contention that he acted in self-defense during his altercation with Rosario. Accordingly, the trial court committed plain error in its self-defense final instructions to the jury.

Having concluded that the trial court committed plain error in the language of its self-defense final instructions to the jury, I now consider whether this Court may exercise discretion to correct this error pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure. Rule 52(b) empowers appellate courts to correct plain errors that affect substantial rights. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). An error is said to affect substantial rights when it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985)) (internal quotation marks and citation omitted). Ordinarily, the defendant bears the burden of persuasion to convince the appellate court that substantial rights have been prejudiced.

Phipps argues that his Due Process rights were violated because the "trial court's jury instruction on self-defense did not specifically allocate the burden of proof, and the jury could believe that the Appellant bore the burden of proving self-defense beyond a reasonable doubt. . . ." (Br. of Appellant 20.) Phipps further argues that "[a] review of the jury instruction clearly demonstrates that the burden of proof was . . . shifted

to the Appellant on the issue of self-defense." (*Id.* at 20-21.) Although I do not necessarily agree that the burden of proof was "clearly shifted" to Phipps, I find instructive the Third Circuit's caveat in *Smith* that, absent an explicit jury instruction on the burden of proof, a juror could reasonably conclude that a defendant bore the burden of proving self-defense beyond a reasonable doubt. *See Smith*, 949 F.2d at 681. Coupled with the fact that under Virgin Islands law this shift in the burden of proof affects the elements of the crime charged and consequently implicates Phipps's due process rights, *see infra* note 9, I find that Phipps's burden of proof in raising the issue of self-defense has been satisfied. Because I concluded that the trial court committed plain error in its self-defense final instructions to the jury, Phipps's convictions must be reversed and the case remanded for a new trial.

### E. The Trial Court Did Not Commit Error When it Refused to Instruct the Jury on Simple Assault, as a Lesser-Included Offense of Assault in the Third Degree, Because There Was No Basis for Instruction on a Lesser-Included Offense

Phipps's argument on this issue is twofold: first, Phipps argues that the trial court erred in failing to instruct the jury on the lesser-included offense of assault in the third degree, to wit, simple assault, and; second, Phipps argues that the evidence introduced at trial was insufficient to support Phipps's conviction of assault in the third degree. (Br. of Appellant 19.) Rule 31(c)(1) of the Federal Rules of Criminal Procedure provides a jury with the authority to find a defendant guilty of "an offense necessarily included in the offense charged." *See* FED. R. CRIM. P. 31(c)(1). The more specific Virgin Islands Statute provides "[w]hen it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only." 5 V.I.C. § 3635.

A lesser-included offense exists where it "is impossible to commit the greater offense without first having committed the lesser offense." *Gov't of the V.I. v. Greenidge*, 600 F.2d 437, 440, 16 V.I. 154 (3d Cir. 1979). Thus, I now examine the statutory language of the assault offenses that is implicated by Phipps's argument. Phipps was charged pursuant to title 14, section 297(2) of the Virgin Islands Code, a felony, which reads: "[w]hoever, under circumstances not amounting to an assault in the first or second degree — (2) assaults another with a deadly weapon; . . . . shall

be fined not less than $500 and not more than $3,000 or imprisoned not more than 5 years or both." Title 14, section 299(a), which charges simple assault and battery, a misdemeanor, provides: "[w]hoever commits — (1) a simple assault; or (2) an assault or battery unattended with circumstances of aggravation — shall be fined not more than $250 or imprisoned not more than six months, or both the [sic] imprisoned and fined." Assault is defined in title 14, section 291: "[w]hoever — (1) attempts to commit a battery; or (2) makes a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery — commits an assault." The statutory language in title 14, section 297(2) necessarily requires the accused to have committed an assault, within the meaning of title 14, section 291, in order to be charged with assault in the third degree. Indubitably, simple assault is a lesser-included offense of assault in the third degree because all the elements of the lesser offense of simple assault are necessarily included in the greater offense of assault in the third degree. *See Gov't of the V.I. v. Joseph*, 685 F.2d 857, 866 (3d Cir. 1982). Consequently, the crime of simple assault in title 14, section 299 is a lesser-included offense of assault in the third degree in title 14, section 297(2).

However, a defendant is entitled to instruction on a lesser-included offense only where the defendant demonstrates that: "(1) the lesser offense is within the offense charged, and (2) based on the evidence presented at trial, a rational jury could find the defendant guilty of the lesser offense but not the greater." *United States v. Wagner*, 834 F.2d 1474, 1487 (9th Cir. 1987) (quotation marks and citations omitted). Phipps was charged in Count III of the Information, with "assault[ing] another with a deadly weapon, a machete, with intent to injure . . . ." (J. A. at Exhibit C; Information at 2.) The testimony of all the witnesses, including Phipps's testimony, informed of Phipps's use of the machete during his altercation with Rosario, in the presence of Beillard, Esquerdo and Officer Donovan. In his brief, Phipps discusses his use of the machete during the altercation with Rosario. During the in-chamber jury instructions conference, Phipps raised the issue of an instruction on simple assault as the lesser-included offense of assault in the third degree. The trial court specifically responded, and I agree, that "given the fact that the defendant did testify that he had a machete during the course of all of the incidents in which there is conduct charged, . . . there's probably not a ground for a lesser included [offense]." (Trial Tr. vol. II, 5.) The trial

court continued, "the jury could find that the machete is not a dangerous weapon — a dangerous and deadly weapon. It seems like an extremely remote possibility." (*Id*. at 6.) No further requests or objections were made by Phipps for instruction on the lesser-included offense of assault in the third degree.

There was no dispute at trial, nor has one been advanced on appeal, that the machete was not a dangerous weapon. When Phipps retrieved the machete from his vehicle, he proceeded, in the presence of eyewitnesses, to engage Rosario in an altercation, in a belligerent, combative, aggressive, hostile and truculent manner. In that instance, the machete was used as a dangerous weapon. Under those circumstances, and considering the overwhelming evidence against Phipps, only a completely irrational jury could have found Phipps guilty of simple assault and not assault in the third degree. Phipps is reminded that the jurors were obligated to first consider the crime charged, third degree assault, and only if they found him not guilty of that crime, could they proceed to consider the lesser-included offense of simple assault. Accordingly, I find no error with the trial court's refusal to give the instruction for the lesser-included offense of assault in the third degree. Lastly, because Phipps was found guilty of assault in the third degree or assault with a dangerous weapon on Count III, the trial court's rejection of Phipps's request for a jury instruction on the lesser included offense of simple assault on the same Count III is moot.

### F. The Trial Court Correctly Sentenced Phipps to Serve Seven Years and Six Months of Incarceration, Pursuant to Title 14, Sections 2251 and 2254 of the Virgin Islands Code, Because Phipps Had Under His Control a Dangerous or Deadly Weapon During the Commission of a Crime of Violence

Phipps was convicted on Count III of the Information, which charges that Phipps committed assault in the third degree in violation of title 14, section 297(2). (J. A. at Exhibit B; Judgment and Commitment 2.) Phipps was also convicted on Count IV, using or possessing a dangerous weapon during the commission or attempted commission of a crime of violence, assault in the third degree, in violation of title 14, section 2251(a)(2)(B). (*Id*.) Phipps was sentenced on Count III to a period of one year of incarceration, to run concurrently with his sentence on Count IV, with a fine of five hundred dollars. (*Id*.) On Count IV Phipps was sentenced to

serve seven years and six months of incarceration, no part of which was suspended, but which was ordered to be served concurrently with his sentence on Count III. Phipps was also ordered, on Count IV, to pay a ten thousand dollar fine, which was suspended.[13] (*Id.*) Phipps contends that the trial court "was misplaced" in sentencing him to a period of incarceration of seven years and six months pursuant to title 14, sections 2251 and 2254. (*See* Br. of Appellant 23.) For the reasons expounded below, I conclude that the trial court imposed a correct sentence upon Phipps.

Title 14, section 2251(a)(2) of the Virgin Islands Code provides:

> (a) Whoever —
>
> . . . .
>
> (2) with intent to use the same unlawfully against another, has, possesses, bears, transports, carries or has under his proximate control, a dagger, dirk, dangerous knife, razor, stiletto, or any other dangerous or deadly weapon shall —
>
> (A) be fined $5,000 and imprisoned not more than five (5) years; or
>
> (B) if he has previously been convicted of a felony, *or has, possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence* (as defined in section 2253(d)(1) hereof) shall be fined $10,000 *and imprisoned not more than fifteen (15) years*, which penalty shall be in addition to the penalty provided for the commission of, or attempt to commit, the crime of violence.

14 V.I.C. § 2251(a) (emphasis added). Title 14, section 2253(d)(1), of the Virgin Islands Code refers to title 23, section 451(e). 14 V.I.C. § 2253(d)(1). Title 23, section 451(e) of the Virgin Islands Code provides:

> (e) "Crime of violence" means *the crime of, or the attempt to commit,* $murder in any degree, voluntary manslaughter, rape, arson, discharging or aiming firearms, mayhem, kidnapping, assault in the first degree, assault in the second degree, *assault in the third degree,* robbery, burglary, unlawful entry or larceny.

---

[13] At the sentencing hearing the court raised the issue of whether the mandatory minimum sentence encompasses the ten thousand dollar fine, or solely the sentence of incarceration. Neither party has addressed this argument on appeal. Therefore, I will not address the issue at this time.

23 V.I.C. § 451(e) (emphasis added). Lastly, title 14, section 2254(a) of the Virgin Islands Code provides:

> (a) A person convicted pursuant to section 2251 of this chapter of having, possessing, bearing, transporting, carrying or having under his proximate control a deadly or dangerous weapon as therein described during the commission or attempted commission of a crime of violence shall be *incarcerated for a term of imprisonment of not less than one-half of the maximum sentence specified in that section.*

14 V.I.C. § 2254(a) (emphasis added).

I must primarily rely on the statutory text in interpreting the meaning of an otherwise unambiguous statute. *Massachusetts v. E.P.A.*, 549 U.S. 497, 529, 127 S. Ct. 1438, 167 L. Ed. 2d 248 (2007). The role of courts engaged in statutory interpretation is to ascertain the legislature's intent. *See Negonsott v. Samuels*, 507 U.S. 99, 104, 113 S. Ct. 1119, 122 L. Ed. 2d 457 (1993); *Morgan v. Gay*, 466 F.3d 276, 277-78 (3d Cir. 2006). There is a presumption that legislative bodies express their intent through the ordinary meaning of the language of the statute; therefore, statutory interpretation always begins with an analysis of the plain text of the statute. *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010); *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). "Where the statutory language is plain and unambiguous, further inquiry is not required." *Rosenberg*, 274 F.3d at 141; *Zuni Pub. Sch. Dist. No. 89 v. Dep't of Educ.*, 550 U.S. 81, 93, 127 S. Ct. 1534, 167 L. Ed. 2d 449 (2007) ("if the intent of [the legislative body] is clear and unambiguously expressed by the statutory language at issue, that would be the end of our analysis.").

After reading the unambiguous language of title 14, sections 2251(a) and 2254(a) it is undeniable that the Legislature of the Virgin Islands ("legislature") intended to impose a mandatory minimum period of incarceration upon persons convicted of possessing a dangerous weapon during the commission of a crime of violence. Section 2251(a)(2)(B) imposes a ten thousand dollar fine and maximum period of incarceration of fifteen years upon persons previously convicted of a felony *or upon those who, during the crime for which the accused is currently before the trial court,* had under their control a dangerous or deadly weapon. The plain meaning of the conjunction "or" is to indicate an alternative.

Merriam-Webster On-line Dictionary, http://www.merriam-webster.com/ dictionary/or (last accessed January 21, 2011). In this instance, the legislature's use of the word "or" indicates that it intended the mandatory period of incarceration to apply in two different situations; when a convicted defendant was previously adjudicated guilty of a felony and when a defendant currently charged with a crime possessed a dangerous weapon during the commission or attempted commission of a crime of violence. Phipps never disputed the allegation that he possessed a machete during the altercation on June 4, 2006 in the vicinity of the Bar. During his summation, Phipps's Counsel explicitly stated "[h]e had the machete, the question is, how did he get the machete. Under what circumstances he moved to get this machete." (Trial Tr. vol. II, 32.)

Title 23, section 451(e) defines "crime of violence" to include assault in the third degree, a crime of which Phipps was convicted. Finally, title 14, section 2254(a) imposes a mandatory minimum period of incarceration of not less than one half the maximum sentence for those convicted pursuant to title 14, section 2251. The maximum sentence under section 2251(a)(2)(B) is fifteen years, one-half of which is seven and one-half years, or seven years and six months. The trial court imposed a sentence of seven years and six months. The language of title 14, sections 2251 and 2254, with which Phipps takes issue is explicit and unambiguous. Obviously, it is Phipps's reading of the statute that is "misplaced." Consequently, I find no error with the trial court sentencing Phipps to seven years and six months incarceration pursuant to title 14, sections 2251 and 2254 of the Virgin Islands Code.

## G. Phipps Submitted an Insufficient Record for Determining Whether the Trial Court Committed Error When it Denied Phipps's Motion for a New Trial Based on Insufficiency of the Evidence Educed at Trial

Phipps argues that the trial court abused its discretion by denying Phipps's Motion for a New Trial based upon the interest of justice. (Br. of Appellant 21.) Phipps then asserts that "viewing the whole record the Honorable Court can be convinced that the verdict was not 'rational', or that the verdict is against the weight of evidence[]." (*Id.* at 21-22.) Phipps further asserts that:

> a miscarriage resulted because the jury discounted the People's eye-witnesses, and the Appellant was convicted of one count of Third De-

gree Assault and one count [of] Using a Deadly Weapon During a Commission of a Crime of Violence, of a victim who never testified as to the extent of his injuries.

(*Id.*) Phipps also importunes this Court by offering; "[t]his Honorable Court could . . . examine [the record] to see if a trial error attributed to a substantial influence on the verdict." (*Id.* at 22.) Phipps failed to elucidate any reason to support his contention that the verdict was irrational. Despite this Court's rules, Phipps egregiously failed to include a copy of his Motion for a New Trial in the Appendix filed with this Court.

I reiterate my admonition that, absent an adequate record, it is not possible to conduct any meaningful review of the issues raised on appeal. *See Meroney v. Delta Int'l Machinery Corp.*, 18 F.3d 1436, 1437 (8th Cir. 1994); *see also United States v. Gerald*, 624 F.2d 1291, 1297-98 (5th Cir. 1980) (refusing to grant appellant's challenge to the verdict based on pretrial publicity "because appellant failed to provide evidentiary support for his general allegations of prejudicial pretrial publicity."); *Deines*, 969 F.2d at 979 (the court, noting its "appellate review [was] necessarily limited" due to appellant's failure to provide an adequate record, affirmed the trial court and dismissed the appeal). My task is doubly frustrated and disconcerted when, in addition to an inadequate record, Phipps fails to propound a cogent or plausible argument in support of his contention. Rule 22 of the Virgin Islands Supreme Court Rules enumerates the required content of all briefs filed with this Court. Rule 22(a)(5) specifically requires that an argument be made in all briefs and that "[t]he argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor [sic], with citations to the authorities, statutes, and parts of the record relied on." VISCR 22(a)(5); *see also Pennsylvania v. Bond*, 539 Pa. 299, 652 A.2d 308, 313 (3d Cir. 2008) (refusing to disturb the trial court's decision where appellant made no specific argument on appeal). Moreover, Rule 24 of the Virgin Islands Supreme Court Rules provides "[w]henever an appeal challenges the sufficiency of the evidence to support a verdict or other determination (including an argument that a finding is clearly erroneous), the appendix shall reprint all the evidence of record which supports the challenged determination." VISCR 24(a). Rule 15 of the Virgin Islands Supreme Court Rules further provides that "[f]ailure to file any accompanying documents that are required pursuant to any of these Rules may result . . .

in the issuance of sanctions against the party or against the attorney without further warning." VISCR 15(b). Accordingly, pursuant to Rule 15 of the Virgin Islands Supreme Court Rules, and because Phipps stupefyingly failed to both present an argument and provide a sufficient record upon which I can examine this issue, I find that Phipps has dismally failed to preserve his claim on appeal that a new trial is warranted based on the insufficiency of the evidence.

## VI. CONCLUSION

In summary, the facts known to the arresting officer at the time of Phipps's warrantless arrest were sufficient to support a finding of probable cause. Phipps failed to provide a copy of the trial proceedings containing any modicum or iota of support for his contention that his Motion to Compel the disclosure of the Internal Affairs investigation of Officer Donovan's conduct concerning this incident should have been granted. The trial court's failure to instruct the jury concerning the People's burden of proof on Phipps's claim of self-defense was plain error. Further, the photographs of Rosario that were admitted at trial were not testimonial; therefore, their admission in evidence did not implicate Phipps's Sixth Amendment right of confrontation. Considering the ample, overwhelming evidence, including the uncontested testimony that Phipps used a machete during the altercation with Rosario, and the fact that Phipps was found guilty of assault in the third degree, no harm resulted from the trial court's decision not to instruct the jury about the lesser-included offense of assault in the third degree, which is; simple assault. The plain language of the enhancement provision of title 14, section 2254(a) mandates that Phipps be sentenced to a minimum of seven years and six months incarceration. Finally, Phipps's Motion for a New Trial based on the insufficiency of the evidence is dismissed due to Phipps's failure to make any meaningful argument and failure to provide an adequate record on appeal. Therefore, because the trial court did not instruct the jury on the burden of proof in its final instructions on Phipps's claim of self-defense, I would **REVERSE** the judgment of the trial court and **REMAND** the case for further proceedings consistent with this concurring Opinion, including the grant of a new trial on the crimes for which Phipps was convicted.